# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

ANGELA ARRINGTON, Individually
and on Behalf of All Others Similarly
Situated,

        Plaintiff,

vs.

NANCY J. RICHARDSON, Director,
Iowa Department of Transportation,
MARK LOWE, Director, Iowa Motor
Vehicle Division, and JOHN DOES 1-
10,

        Defendants.

No. C09-4049-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION TO
DISMISS**

_____

## TABLE OF CONTENTS

**I. BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  **A. Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  **B. Factual Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**II. ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  **A. Standards for a Motion to Dismiss** . . . . . . . . . . . . . . . . . . . . . . . 4
  **B. Arrington's § 1983 Claim** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    **1. Arguments of the Parties** . . . . . . . . . . . . . . . . . . . . . . . . 7
      **a. Defendants' arguments** . . . . . . . . . . . . . . . . . . . . . 7
      **b. Arrington's arguments** . . . . . . . . . . . . . . . . . . . . . 9
    **2. Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      **a. The DPPA asserts a federal right** . . . . . . . . . . . . . 11
      **b. Congressional foreclosure of § 1983 enforcement** . . . . 13
      **c. Other precedent** . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<span style="font-size: 3em; float: left;">A</span> licenced Iowa driver brings suit, individually and on behalf of a class, against the director of the Iowa Department of Transportation ("IDOT"), the director of the Iowa Motor Vehicle Division ("IMVD"), and ten John Does. According to the driver, personal information that she and other licensed Iowa drivers provided to the IDOT and/or IMVD was disclosed, sold, or otherwise disseminated in violation of the federal Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* ("DPPA"). The driver claims that these actions give rise to a cause of action under the DPPA and 42 U.S.C. § 1983. The IDOT and IMVD directors, however, have moved to dismiss the § 1983 count, as they allege that the privacy rights the DPPA creates are not separately enforceable under § 1983—they argue that the DPPA's remedial scheme evidences Congress's intent to make the DPPA's remedies the exclusive remedies for violations of the DPPA. The court must, in order to decide this Motion to Dismiss, decide whether the privacy rights Congress created under the DPPA are enforceable under § 1983.

## I. BACKGROUND

### A. Procedural Background

On June 11, 2009, Plaintiff Angela Arrington filed her Class Action Complaint with Jury Trial Demanded (docket no. 1) with this court. In Arrington's complaint, she claims that Nancy Richardson, Director of the IDOT and Mark Lowe, Director of the IMVD ("Defendants"), and John Does 1-10[1] violated the law when they provided personal information pertaining to Arrington, and the putative class members, to Source for Public

---

[1] Arrington's complaint states that John Does 1-10 are "directors, employees, agents, and/or contractors of DOT or MVD that are yet to be named and whose identity will become known through discovery. . . ." Docket no. 1.

Data, LP ("Public Data") and Shadowsoft, Inc. ("Shadowsoft"). According to Arrington, these third parties sold and/or otherwise disseminated the information over the internet. Arrington claims that the Defendants' actions violated the DPPA (count 1) and that the statutory right to privacy provided in the DPPA may also be enforced under 42 U.S.C. § 1983 (count 2).

On August 21, 2009, Defendants filed their Motion to Dismiss (docket no. 9) and Brief in Support of Motion to Dismiss (docket no. 9-2). In Defendants' motion, they claim that count 2 should be dismissed, as the DPPA cannot be separately enforced under § 1983. According to Defendants, the DPPA contains a comprehensive remedial scheme, which implies a congressional intent to preclude plaintiffs from enforcing the privacy right provided by the DPPA under § 1983.

Arrington filed her Response to Defendants' Motion to Dismiss with Suggestions in Support (docket no. 10) on September 4, 2009. In Arrington's response, she argues that the remedial provisions of the DPPA and § 1983 are complementary rather than conflicting and, therefore, the DPPA's statutory right to privacy is enforceable under § 1983.

## B.  Factual Background[2]

Arrington, and the putative class, are licensed drivers in Iowa, who provided "personal information" (as defined by the DPPA, 18 U.S.C. §§ 2721, *et seq.*) to the IDOT and IMVD. The IDOT and IMVD provided the personal information from these drivers

---

[2] This court assumes the truth of the facts alleged in Arrington's complaint. *See Fitzgerald v. Barnstable School Committee*, 129 S.Ct. 788, 792 (2009) ("Because this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we assume the truth of the facts as alleged in petitioners' complaint.")

to Shadowsoft[3], in the form of a large database—the database contained personal information from tens of thousands of licensed drivers in the State of Iowa. This personal information was then transferred to Public Data[4], which made the information available for search and sale on its website, www.publicdata.com. At no time did Arrington or any other putative class members provide their express consent for this information to be disseminated.

## II. ANALYSIS

### A. Standards for a Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss on the basis of "failure to state a claim upon which relief can be granted."[5] In a recent decision, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court revisited the standards for determining whether factual allegations are sufficient to

---

[3] Shadowsoft is a Texas corporation, which specializes in public records database distribution.

[4] Public Data is a company that aggregates consumer data on individual members of the public and then sells that information over the internet.

[5] Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." FED. R. CIV. P. 12, advisory committee's note. The advisory committee notes make it clear that the "changes are to be stylistic only." *Id.* The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) continues to authorize a motion to dismiss "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Thus, the recent amendment did not change the standards for a Rule 12(b)(6) motion.

survive a Rule 12(b)(6) motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) (" [T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g., Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic*, 550 U.S. at 555-56 (internal citations to footnotes omitted); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (instructing that "short and plain statement"

requirement "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."). Thus, the Eighth Circuit Court of Appeals has recognized that, under *Bell Atlantic*, "To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level. . . .'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 555). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 570); *accord Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Bell Atlantic*, 550 U.S. at 557).

Nevertheless, the court must still "accept as true the plaintiff's well pleaded allegations." *Parkhurst*, 569 F.3d at 865 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[W]e 'assume[ ] as true all factual allegations of the complaint'" (quoting *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). The court must also still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (post-*Bell Atlantic* decision). On the other hand, "[w]here the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997), for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*).

## B. Arrington's § 1983 Claim

### 1. Arguments of the Parties

#### a. Defendants' arguments

Defendants claim that Arrington's § 1983 claim should be dismissed, because the DPPA's comprehensive remedial scheme evidences Congress's intent to preclude plaintiffs from enforcing the privacy rights contained in the DPPA under § 1983. Although Defendants admit that the DPPA contains a federal right, they argue that the DPPA's remedial scheme is sufficiently comprehensive to rebut the presumption that the DPPA's statutory right to privacy is enforceable under § 1983, as it provides for a civil action and remedies, including actual damages, punitive damages, reasonable attorneys' fees and other litigation costs, and other preliminary and equitable relief.

Defendants argue that Eighth Circuit Court of Appeals and United States Supreme Court precedent supports dismissal of the § 1983 claim. Defendants, first, compare the DPPA's remedial scheme with the Americans with Disabilities Act ("ADA"), and claim that the Eighth Circuit Court of Appeals has found that the ADA's comprehensive remedial scheme bars plaintiffs from bringing § 1983 claims against government officials in their individual capacities. *See* docket no. 9-2 (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999)). Second, Defendants compare the DPPA with Title VII, and claim that the Eighth Circuit Court of Appeals has found that "Congress' express intent that plaintiffs seek voluntary conciliation of their Title VII claims would be frustrated if a plaintiff, after failing to file [a complaint with the Equal Employment Opportunity Commission ("EEOC")], could bring the same claim in federal court under § 1983." *Id.* (quoting *Foster v. Wyrick*, 823 F.2d 218 (8th Cir. 1987). Third, Defendants contrast the DPPA with Title IX—Title IX's only enforcement mechanism is terminating federal support to the institutions in violation of Title IX—and claim that the Eighth Circuit Court

7

of Appeals has allowed separate § 1983 claims due to a lack of a "sufficiently comprehensive remedial scheme." *Id.* (citing *Crawford v. Davis*, 109 F.3d 1281, 1284 (8th Cir. 1997). Fourth, Defendants compare the DPPA with the Federal Water Pollution Control Act ("FWPCA") and the Marine Protection, Research, and Sanctuaries Act of 1972 ("MPRSA"), and claim that the United States Supreme Court has found that neither provided plaintiffs with the ability to sue under § 1983. *Id.* (citing *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981) ("In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.") Fifth, Defendants contrast the DPPA with Title IV-D of the Social Security Act and argue that the Court found Title IV-D was not "sufficiently comprehensive to demonstrate congressional intent to preclude § 1983 suits," because it did not contain a "panoply of enforcement options, [such as] non-compliance orders, civil suits, and criminal penalties," as the FWPCA did. *Id.* (citing *Blessing v. Freestone*, 520 U.S. 329, 347 (1997)).

Defendants also argue that this court should follow a recent decision out of a United States Federal District Court in the Western Division of Missouri, which dealt with exactly the same issue as is before this court—whether to dismiss a § 1983 claim brought to enforce the privacy rights under the DPPA. *Id.* (citing *Roberts v. Source for Public Data*, 606 F.Supp.2d 1042 (W.D.Mo. 2008)). According to Defendants, the *Roberts* court presumed that the DPPA's enforcement scheme evidenced Congress's intent that the DPPA was to be the exclusive remedy for violations under the DPPA. *Id.* Defendants recognize, however, that the Eleventh Circuit Court of Appeals reached a different result in *Collier v. Dickinson*, 477 F.3d 1306, 1311 (11th Cir. 2007).

### b.    *Arrington's arguments*

Arrington claims that the privacy rights provided by the DPPA are enforceable under § 1983. Arrington argues that § 1983 is intended to enforce rights that are defined by federal statute and that the DPPA is a federal statute that satisfies the three part test for determining whether a particular federal law contains a federal right.    As a result, Arrington argues that the rights are enforceable under § 1983.    *See* docket no. 10 ("To determine whether a statute gives rise to a federal right enforceable via Section 1983, the court considers three factors:  (1) whether the provision in question was intended to benefit putative plaintiff, (2) whether the interest plaintiff asserts is not so vague and amorphous that it is beyond the competence of the judiciary to enforce, and (3) whether the provision in question creates a binding obligation on the governmental unit.") (citing *Blessing*, 520 U.S. at 329-30).

Arrington points out that the highest court to address whether the rights provided by the DPPA could be enforced with a § 1983 action—the Eleventh Circuit Court of Appeals in *Collier v. Dickinson*—found that the rights were enforceable under § 1983. Arrington claims the *Collier* court found that the § 1983 claim complemented, not conflicted with, the provisions of the DPPA and held that the statutory right to privacy provided by the DPPA was enforceable under § 1983.

Arrington also cites this court's statement that "cases in which congressional intent to foreclose a § 1983 remedy may be inferred from a comprehensive remedial scheme are the 'exceptional cases,' because '§ 1983 remains a generally and presumptively available remedy for claimed violations of federal law,'" *id.* (quoting *Mummelthie v. City of Mason City*, 873 F.Supp. 1293, 1341 (N.D.Iowa 1995), in turn quoting *Livadas v. Bradshaw*, 512 U.S. 107 (1994)), and claims that this is not such an "exceptional case." *Id.*  In response to Defendants' argument that the court should dismiss the § 1983 claim because it is

analogous to the ADA and FWPCA, Arrington claims that Defendants' cases are inapposite to the case before the court, and the § 1983 analysis is context specific with regard to the statute at issue in each case.

### 2. *Analysis*

Defendants move to dismiss Arrington's § 1983 claim, arguing that the privacy rights provided in the DPPA cannot be enforced under § 1983. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. In order to determine whether Arrington may bring a § 1983 claim to enforce the privacy rights allegedly provided in the DPPA, the court must, first, determine whether the DPPA contains a federal right. *See Blessing*, 520 U.S. at 340, 117 S.Ct. at 1359 (citations omitted). If the DPPA provides a federal right then there is a "rebuttable presumption that the right is enforceable under § 1983." *Id.* at 341, 1360. Second, the court will analyze whether there is evidence that Congress intended to foreclose § 1983 enforcement. *Lankford v. Sherman*, 451 F.3d 496, 508 (8th Cir. 2006) ("The presumption [that the right is enforceable under § 1983] is rebutted if Congress explicitly or implicitly forecloses section 1983 enforcement.") (citing *Blessing*, 520 U.S. at 341, 1353). If there is evidence that Congress intended to foreclose § 1983 relief due to its provision of a remedy in the statute, the court will consider whether there is "textual indication" that Congress intended the remedy to "complement, rather than supplant," the remedies in § 1983. *City of Rancho Palos Verdes, California, v. Abrams*, 544 U.S. 113, 122, 125 S.Ct. 1453, 1459 (2005) ("The ordinary inference that the remedy provided in the statute

is exclusive can surely be overcome by textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983.").

### a.      The DPPA asserts a federal right

"In order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal right, not merely a violation of federal law." *Blessing*, 520 U.S. at 340, 117 S.Ct. at 1359 (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 448-449, 107 L.Ed.2d 420 (1989)). The United States Supreme Court has provided three factors to apply when determining whether a statute provides a federal right:

> First, Congress must have intended that the provision in question benefit the plaintiff[6]. *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 430, 107 S.Ct. 766, 773-774. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. *Id.*, at 431-432, 107 S.Ct., at 774-775. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 510-511, 110 S.Ct. 2510, 2517-2518; *see also Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539-1540, 67 L.Ed.2d 694 (1981) (discussing whether Congress created obligations giving rise to an implied cause of action).

---

[6]  "In *Gonzaga University v. Doe*, the Supreme Court clarified the first prong, holding that 'anything short of an unambiguously conferred right' does not support an individual right of action under section 1983." *Lankford*, 451 F.3d at 508 (citing *Gonzaga University v. Doe*, 536 U.S. 273, 283, 122 S.Ct. 2268 (2002)).

*Id.* at 340-41, 1359-60. If, based on these three factors, the statute creates a federal right, there is a "rebuttable presumption that the right is enforceable under § 1983." *Id.* at 341, 1360. Defendants do not contest, based on these three factors, that the DPPA creates a an individual right to privacy, *see* docket no. 9-2; *see also Collier*, 477 F.3d at 1310-11[7], and, therefore, the court finds that the DPPA asserts a federal right and that there is a

---

[7] In *Collier*, the court similarly found that the DPPA created a federal right based on these three factors:

> First, the enforcement provisions of the statute unambiguously focus on benefitting individuals, rather than focusing on benefitting a group or making system-wide changes. The statute makes the official who disobeys the law "liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C.A. § 2724(a) (emphasis added). Second, it can hardly be said that the protections offered by the statute are "so vague and amorphous that its enforcement would strain judicial competence." *Blessing*, 520 U.S. at 340-41 (quotation and citation omitted). Rather, the protections offered by the statute are clear and specific. The language of Sections 2721(b)(11)-(13) unambiguously requires the consent of individuals before their motor vehicle record information may be released, and Section 2724(a) unambiguously states that an individual who knowingly violates the statute shall be liable to the individuals to whom the information pertains in an action in federal district court. The language sets forth the contours and limits of the right clearly, and the right is easily enforceable by courts. Third, the statutory language is mandatory in that it requires that the states obtain the consent of the persons whose information is to be disseminated.

*Collier*, 477 F.3d at 1310-11.

rebuttable presumption that the DPPA is enforceable under § 1983. *See Blessing*, 520 U.S. at 341, 117 S.Ct. at 1360.

### b.    Congressional foreclosure of § 1983 enforcement

The rebuttable presumption that the DPPA is enforceable under § 1983 "is rebutted if Congress explicitly or implicitly forecloses section 1983 enforcement." *Lankford*, 451 F.3d at 508 (citing *Blessing*, 520 U.S. at 341, 1353).   Implicit foreclosure occurs when Congress creates "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* (citing *Livadas v. Bradshaw*, 512 U.S. 107, 133, 114 S.Ct. 2068, 2083, 129 L.Ed.2d 93 (1994)).   The United States Supreme Court has explained:

> The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983. As we have said in a different setting, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).   Thus, the existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not.

*Rancho Palos Verdes*, 544 U.S. at 121, 125 S.Ct. at 1458.   " The critical question . . . is whether Congress meant the judicial remedy expressly authorized [in the statute] to coexist with an alternative remedy available in a § 1983 action." *Id.* at 120-21, 1458.   It is the defendant's burden to prove that Congress has withdrawn § 1983 as a remedy for the violation of a federal right. *Golden State Transit Corp.*, 493 U.S. at 107, 110 S.Ct. at 449.

The DPPA's remedial scheme provides an extensive list of remedies—the DPPA provides for a civil cause of action[8] and allows the court to award actual damages, punitive damages, attorneys' fees and other litigation costs, and "such other preliminary and equitable relief as the court determines to be appropriate." 18 U.S.C. § 2724(b). Punitive damages may be awarded "upon proof of willful or reckless disregard of the law." 18 U.S.C. § 2724(b)(2). The list of parties that can be sued under the DPPA is equally extensive, as the "person" who can be sued under the DPPA is defined as "an individual, organization or entity, but does not include a State or agency thereof." 18 U.S.C. § 2725(2). The DPPA contains no references to a particular statute of limitations applicable to claims under the DPPA, nor does it require plaintiffs to comply with any preconditions for filing suit. *See* 18 U.S.C. §§ 2721-2725.

This broad array of remedies, and parties against whom the remedies may be sought, is more extensive than what is provided under § 1983. "Although § 1983 on its face says nothing about damage rules, damages under this section . . . , can be nominal, compensatory, or punitive." *Civil Rights and Civil Liberties Litigation: The Law of Section 1983* (West Group 4th ed. 1997 & Supp. 1998-2009, CIVLIBLIT § 4:1 (2009). Compensatory damages "must be pleaded and proved." *Id.* Punitive damages may be awarded based on "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law." *Smith v. Wade*, 461 U.S. 30, 51, 103 S.Ct. 1625, 1637 (U.S.,1983) (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 233, 90 S.Ct. 1598, 1642, 26 L.Ed.2d 142 (1970) (BRENNAN, J., concurring and dissenting)). In a § 1983 action, a "successful plaintiff may recover not only damages but reasonable attorney's fees

---

[8] The DPPA also provides for a criminal fine and civil penalty. *See* 18 U.S.C. § 2723.

and costs under 42 U.S.C. § 1988." *Rancho Palos Verdes*, 544 U.S. at 123, 125 S.Ct. at 1460 (citing *Maine v. Thiboutot*, 448 U.S. 1, 9, 100 S.Ct. 2502 (1980)). Like the DPPA, § 1983 excludes suits against states and state agencies. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Stanton v. Johnson*, 13 Fed.Appx. 441, *1 (8th Cir. 2001) ("[A]bsent waiver of Eleventh Amendment immunity, neither state nor its agencies may be subject to suit in federal court.") (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)). Of course, § 1983 claims may only be brought against state actors. *See Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) ("Only state actors can be held liable under Section 1983.") (citing *Youngblood v. Hy-Vee Food Stores, Inc.,* 266 F.3d 851, 855 (8th Cir. 2001)). Although § 1983 may provide for other equitable relief, this relief is similarly available under the DPPA. *See* 18 U.S.C. § 2724(b)(4) (The DPPA provides for "such other preliminary and equitable relief as the court determines to be appropriate."); *see also Kehoe v. Fidelity Federal Bank & Trust*, 421 F.3d 1209, 1217 (11th Cir. 2005) (The court found that the plaintiff, suing under the DPPA, sufficiently requested injunctive relief in his complaint, and the court remanded the case to allow the district court to address the plaintiff's request for injunctive relief.).

The fact that the DPPA's remedial scheme provides for such an extensive list of remedies—more extensive than is provided under § 1983—makes unclear how the DPPA's enforcement scheme is "incompatible with individual enforcement under § 1983." *See Lankford*, 451 F.3d at 508. Although a "private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983," *Rancho Palos Verdes*, 544 U.S. at 121, 125 S.Ct. at 1458, § 1983

is not a more expansive remedy in relation to the DPPA. As a result, it is questionable whether Congress intended to allow the DPPA's remedies to coexist with the remedies in § 1983, based only upon evaluating the existence and breadth of available remedies.

Defendants, in attempting to meet their burden of proving that Congress has withdrawn § 1983 as a remedy for violating the federal right in the DPPA, cite *Roberts v. Source for Public Data*, 606 F.Supp.2d 1042 (W.D.Mo. 2008), where the district court found that the DPPA was not enforceable under § 1983. The *Roberts* court primarily relied on the United States Supreme Court's opinion in *Blessing*, where the Court allowed § 1983 enforcement because Title IV-D of the Social Security Act "did not contain the 'panoply of enforcement options, including noncompliance orders, civil suits, and criminal penalties' contained in the [FWPCA], which it had decided was not enforceable through § 1983 in *Sea Clammers*." *Roberts*, 606 F.Supp.2d at 1046 (citing *Blessing*, at 347, 117 S.Ct. 1353 in turn citing *Sea Clammers*, 453 U.S. at 13, 101 S.Ct. 2615). According to the *Roberts* court, "[l]ike the [FWPCA], and unlike Title IV-D, the DPPA provides for multiple avenues of enforcement." *Id.* The *Roberts* court identified the relief available under the DPPA and concluded that, "[g]iven this comprehensive remedial scheme, the Court must presume that Congress intended that the enforcement scheme it created in the DPPA would be the exclusive remedy for violations, precluding resort to § 1983 by Plaintiffs." *Id.*

Notwithstanding the *Roberts* court's inference that Congress intended the DPPA's remedy to be exclusive—and this court's uncertainty in applying the inference in this case—the United States Supreme Court has explained that "[t]he ordinary inference that the remedy provided in the statute is exclusive can surely be overcome by textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983." *Rancho Palos Verdes*, 544 U.S. at 122, 125 S.Ct. at 1459. In *Rancho Palos*

*Verdes*, the Court applied this new principle but found that the statute at issue, the Telecommunications Act ("TCA"), did not complement § 1983. The Court stated:

> There is . . . no such [textual] indication in the TCA, which adds no remedies to those available under § 1983, and limits relief in ways that § 1983 does not. Judicial review of zoning decisions under [the TCA] must be sought within 30 days after the governmental entity has taken "final action," and, once the action is filed, the court must "hear and decide" it "on an expedited basis." [47 U.S.C.] § 332(c)(7)(B)(v). The remedies available, moreover, perhaps do not include compensatory damages (the lower courts are seemingly in disagreement on this point), and certainly do not include attorney's fees and costs. [Section] 1983 action, by contrast, can be brought much later than 30 days after the final action, and need not be heard and decided on an expedited basis. And the successful plaintiff may recover not only damages but reasonable attorney's fees and costs under 42 U.S.C. § 1988. *Thiboutot*, 448 U.S. at 9, 100 S.Ct. 2502.

*Id.* at 122-23, 1459-60 (internal footnotes omitted). The DPPA, unlike the TCA, does not contain preconditions to filing suit or a requirement to hear and decide claims under the DPPA on an expedited basis. And like § 1983, the DPPA provides for an award of actual damages, punitive damages, and attorneys' fees and other litigation costs. 18 U.S.C. § 2724(b).

The Eleventh Circuit Court of Appeals found, in *Collier*, that § 1983 enforcement complemented the remedial scheme in the DPPA and that the statutory right to privacy created by the DPPA was separately enforceable under § 1983. *Collier*, 477 F.3d at 1311. The court explained:

> Rather than conflicting, we find the relief offered by the DPPA and [§]1983 to be complementary. The DPPA did not create "so many specific statutory remedies" for individual enforcement that it is "hard to believe that Congress intended

17

> to preserve the § 1983 right of action." *Blessing*, 520 U.S. at
> 347, 117 S.Ct. 1353. To ensure compliance with the statute,
> the DPPA provides a remedy against the state and a remedy
> against individuals who disregard the law. There is nothing in
> the statute to suggest that Congress intended to exclude Section
> 1983 relief.

*Id.* Although the *Collier* court did not cite *Rancho Palos Verdes*, the Eleventh Circuit Court of Appeals's reasoning is consistent with the Court's reasoning in *Rancho Palos Verdes*. Foremost among the similarities, is that the *Collier* court apparently finds that the DPPA's broad remedial scheme does not conclusively establish congressional intent to supplant § 1983. This is in contrast to the *Roberts* opinion, which states:

> [The DPPA] provides for civil penalties and criminal penalties
> imposed by the United States Attorney General as well as civil
> actions by private individuals. 18 U.S.C. §§ 2723-2724.
> Private citizens may sue under § 2724 to recover actual and
> punitive damages, attorneys fees, and costs, as well as
> appropriate preliminary and equitable relief. 18 U.S.C. §
> 2724. Given this comprehensive remedial scheme, the Court
> must presume that Congress intended that the enforcement
> scheme it created in the DPPA would be the exclusive remedy
> for violations, precluding resort to § 1983 by Plaintiffs.

*Roberts*, 606 F.Supp.2d at 1046. The *Roberts* court simply fails to consider whether there is "textual indication, express or implicit, that [shows] the remedy is to complement, rather than supplant, § 1983." *Rancho Palos Verdes*, 544 U.S. at 122, 125 S.Ct. at 145.

This court, in considering whether there is "textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983," *Rancho Palos Verdes*, 544 U.S. at 122, 125 S.Ct. at 145, finds that there is such indication. First, the DPPA's remedies mirror § 1983's remedies in some respects, and are broader in other respects. Second, the DPPA does not contain preconditions to filing suit in federal district court.

Third, the court finds persuasive the Eleventh Circuit Court of Appeals's reasoning in *Collier*. *See Collier*, 477 F.3d at 1311 ("Rather than conflicting, we find the relief offered by the DPPA and [§]1983 to be complementary.").

Although "the provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983," *Rancho Palos Verdes*, 544 U.S. at 121, 125 S.Ct. at 1458, the court finds that the DPPA's remedial scheme complements the relief available under § 1983. *See Collier*, 477 F.3d at 1311. ("Rather than conflicting, we find the relief offered by the DPPA and [§]1983 to be complementary"). Congress neither required plaintiffs to comply with any procedures before filing suit nor did it restrict plaintiffs from obtaining any remedies provided under § 1983. As a result, the court will not dismiss Arrington's claim for relief under § 1983.

### c. Other precedent

This court's finding that Arrington's § 1983 claim should not be dismissed is consistent with past United States Supreme Court and Eighth Circuit Court of Appeals precedent. "In three cases, [the United States Supreme Court] has found that statutory enactments precluded claims under [§ 1983]. *Fitzgerald*, 129 S.Ct. at 793 (citing *Sea Clammers*; *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Rancho Palos Verdes*). "[I]n all three cases, the statute at issue required plaintiffs to comply with particular procedures and/or to exhaust particular administrative remedies prior to filing suit." *Id.* at 795 (quoting *Sea Clammers*, 453 U.S. at 6, 101 S.Ct. 2615; *Smith v. Robinson*, 468 U.S. at 1011-1012, 104 S.Ct. 3457, 82 L.Ed.2d 746; *Rancho Palos Verdes*, 544 U.S. at 122, 125 S.Ct. 1453). The statutory enactments in these three cases also excluded certain remedies otherwise available under § 1983, and did not allow courts to provide "such other preliminary and equitable relief as the court determines to

be appropriate." 18 U.S.C. § 2724. In fact, the *Fitzgerald* Court stated that "'the existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not.'" *Fitzgerald*, 129 S.Ct. at 796 (quoting *Rancho Palos Verdes*, 544 U.S. at 121, 125 S.Ct. 1453).

This court's finding is also consistent with the Eighth Circuit Court of Appeals's precedent barring § 1983 claims, identified by Defendants. Defendants compare the DPPA with the ADA, claiming that they both have comprehensive remedial schemes. *See* docket no. 9-2 (citing *Alsbrook*, 184 F.3d at 999. Because the Eighth Circuit Court of Appeals has barred plaintiffs from bringing § 1983 actions to enforce rights in the ADA, Defendants argue that Arrington should be similarly barred from pursuing a § 1983 cause of action. The Eighth Circuit Court of Appeals, in *Alsbrook*, held that "Title II's detailed remedial scheme bars [the plaintiff] from maintaining a section 1983 action against the commissioners in their individual capacities for alleged violations of the ADA." *Alsbrook*, 184 F.3d at 1011. However, the court explained:

> More fundamentally, we find that [the plaintiff] cannot bring a section 1983 claim against the commissioners in their individual capacities when, as we have earlier concluded, he could not do so directly under the ADA. *Huebschen v. Department of Health and Soc. Serv.*, 716 F.2d 1167, 1170 (7th Cir.1983) ("[A] plaintiff cannot bring an action under section 1983 based upon Title VII against a person who could not be sued directly under Title VII."). Allowing a plaintiff to bring a section 1983 claim based on violations of Title II against a defendant who could not be sued directly under Title II would enlarge the relief available for violations of Title II. *See id.* We have consistently stated that section 1983 creates no substantive rights; that it is merely a vehicle for seeking a federal remedy for violations of federally protected rights.

> *See, e.g., Riley v. St. Louis County*, 153 F.3d 627, 630 (8th
> Cir.1998); *Foster*, 823 F.2d at 221. Thus, [the plaintiff] is
> precluded from bringing a section 1983 suit against the
> commissioners in their individual capacities for alleged
> violations of Title II of the ADA when he could not do so
> directly under Title II itself.

*Id.* at 1011-12 (internal citations to footnotes omitted). The *Alsbrook* court found Title II's

broad remedial scheme barred the plaintiff from bringing a § 1983 claim, but the court

explained that this broad remedial scheme precluded § 1983 enforcement because it would

"enlarge the relief available for violations of Title II." *Id.* at 1012. Arrington's § 1983

claim would not enlarge the relief available under the DPPA. In fact, the DPPA excludes

suits against states and state agencies, *see* 18 U.S.C. § 2725(2) ("'[P]erson' means an

individual, organization or entity, but does not include a State or agency thereof."), as

does § 1983. *See Will*, 491 U.S. at 71, 109 S.Ct. at 2312 ("We hold that neither a State

nor its officials acting in their official capacities are 'persons' under § 1983."); *Stanton*,

13 Fed.Appx. 441, *1 ("[A]bsent waiver of Eleventh Amendment immunity, neither state

nor its agencies may be subject to suit in federal court.") (citing *Puerto Rico Aqueduct and

Sewer Auth.*, 506 U.S. at 144, 113 S.Ct. 684, 121 L.Ed.2d 605).

Second, Defendants compare the DPPA with Title VII. Docket no. 9-2 (citing

*Foster*, 823 F.2d at 218). In *Foster*, the court recognized that "[w]hen the remedial

devices provided in a particular Act are sufficiently comprehensive, they may suffice to

demonstrate Congressional intent to preclude the remedy of suit under § 1983," *Foster*,

823 F.2d at 221 (quoting *Sea Clammers*, 453 U.S. at 20, 101 S.Ct. at 2626), and found

that "a Title VII disparate impact claim may not be asserted in a § 1983 action." *Id.* at

222. The court's rationale, however, was that "Congress' express intent that plaintiffs

seek voluntary conciliation of their Title VII claims would be frustrated if a plaintiff, after

failing to file [a complaint with the Equal Employment Opportunity Commission], could bring the same claim in federal court under § 1983." *Id.* Unlike Title VII, the DPPA does not contain any preconditions to filing suit.

The court finds that Defendants have not met their burden of proving that Congress has withdrawn § 1983 as a remedy for the violation of a federal right found in the DPPA. *Golden State Transit Corp.*, 493 U.S. at 107, 110 S.Ct. at 449. Although Arrington's § 1983 claim may be redundant, the court finds she is not barred from pursing the claim in this case.

### III. CONCLUSION

THEREFORE, the court finds that Defendant Nancy Richardson's and Defendant Mark Lowe's Motion to Dismiss (docket no. 9) is denied.

**IT IS SO ORDERED.**

**DATED** this 1st day of October, 2009.

Mark W. Bennett
_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA